UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

JUL 07 2025

LAURA A. AUSTIN, CLERK
BY: _K. Campbell_
DEPUTY CLERK

David Coleman, Plaintiff,

v.

EarthLink, LLC, Defendant.

Case No. 1:25-cv-00032-JPJ-PMS

# Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss

**Introduction:** Plaintiff David Coleman, proceeding pro se, respectfully submits this opposition to EarthLink, LLC's Rule 12(b)(6) motion to dismiss. EarthLink's motion asserts various grounds – including failure to state a claim, untimeliness/lack of exhaustion, no adverse employment action, insufficient factual allegations, and arguments that certain ADA protections (such as confidentiality and hostile work environment) do not apply. Each of these arguments is without merit. Under the **liberal pleading standards** afforded to pro se litigants, Plaintiff's Complaint – which details specific incidents, dates, and actors – adequately states plausible claims for relief under the Americans with Disabilities Act (ADA). The Complaint describes how EarthLink failed to accommodate Plaintiff's Type 1 diabetes, allowed a supervisor to disclose his medical condition and harass him, and retaliated against him after he sought accommodations and filed an EEOC charge. Accepting the well-pleaded facts as true and drawing all inferences in Plaintiff's favor, as the Court must at this stage, dismissal is unwarranted. Plaintiff addresses each of Defendant's arguments in turn, and respectfully urges the Court to **deny the motion to dismiss** so that his claims may be heard on the merits.

# Legal Standard (Rule 12(b)(6) and Pro Se Pleading)

To survive a Rule 12(b)(6) motion, a complaint need only provide "a short and plain statement of the claim" showing an entitlement to relief (Fed. R. Civ. P. 8(a)(2)), and factual allegations sufficient to raise a plausible right to relief. In evaluating a motion to dismiss, the Court must **accept all well-pleaded factual allegations as true**, and draw all reasonable inferences in favor of the plaintiff. Dismissal is only appropriate if, even assuming the facts as alleged, the

complaint fails to state any viable legal claim. Importantly, a plaintiff is **not required to plead a detailed prima facie case** of discrimination or retaliation at the complaint stage. Rather, the allegations need only "nudge" the claims across the line from conceivable to plausible.

Because Mr. Coleman is litigating **pro se**, his pleadings are held to an especially lenient standard. The Court must **liberally construe** a pro se complaint and not dismiss for technical pleading deficiencies. As the Supreme Court has underscored, a filing by a self-represented litigant is "to be liberally construed," and **"a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."**. In other words, the Court's duty is to interpret the complaint to raise the strongest claims it suggests, and a pro se plaintiff should be afforded reasonable opportunity to develop a valid claim. This liberal standard, combined with the ordinary Rule 12(b)(6) mandate to accept the facts as true, means that **dismissal at this preliminary stage is disfavored** so long as the complaint contains any plausible claim for relief. As shown below, Plaintiff's complaint easily meets these standards.

# Argument

### I.    The Complaint Adequately States ADA Claims and Satisfies Rule 8

EarthLink first argues that the Complaint fails to state a claim under Rule 12(b)(6). This argument ignores the detailed factual allegations in the pleading and misapplies the pleading standard. Plaintiff's Complaint contains specific facts supporting **multiple ADA causes of action**, including failure to accommodate, retaliation, disability-based harassment, and improper disclosure of medical information. Far from being vague or conclusory, the Complaint provides dates, identifies key individuals, and describes what happened – more than enough to put Defendant on notice of the claims. At this stage, Plaintiff is **not required to prove his case or allege every piece of evidence**; he need only state a plausible claim, which he has done.

To illustrate, the Complaint alleges that *on September 18, 2024*, Plaintiff **submitted formal documentation requesting ADA accommodations** (flexible break and lunch times) due to his diabetes. It further alleges that HR **unreasonably delayed acting on this request**, such that by *January 7, 2025* – nearly four months later – Plaintiff still had no accommodation and was instead written up with a **verbal warning for absences related to his medical condition**. These facts, assumed true, plausibly show that EarthLink failed to provide a timely reasonable accommodation and even penalized Plaintiff for disability-related absences while his request languished. The ADA expressly deems it discriminatory to **"not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"**. See 42 U.S.C. § 12112(b)(5)(A). The Complaint's Count I for *Failure to Accommodate* is thus solidly grounded in factual allegations: Plaintiff had a documented need for schedule flexibility, he followed the proper process to request

accommodation, but EarthLink's inaction led to disciplinary action against him. At the very least, this states a **plausible claim of failure to accommodate** under the ADA, which is a form of unlawful discrimination.

Similarly, the Complaint pleads a coherent claim of **ADA retaliation** (Count II). It alleges that after Plaintiff engaged in protected activity – namely, requesting an accommodation and later filing an EEOC charge – he was subjected to worsened treatment by his supervisor and the company. The Complaint details how *on February 27, 2025*, Plaintiff's manager (Wes Polly) **publicly disclosed Plaintiff's ADA status and medical condition to a coworker** during a coaching session, accusing Plaintiff of "abusing the system" and even referencing a friend's death from diabetes. Such a disclosure was made shortly after Plaintiff had been persistently seeking accommodation and complaining to HR, suggesting retaliatory animus. Moreover, *on May 1-2, 2025*, the same supervisor allegedly **treated Plaintiff in a disrespectful and demeaning manner in front of colleagues**, an incident witnessed by at least three coworkers (Travis B., Sonja H., and Kayla L.). Plaintiff had by then escalated his complaints up the chain (including to EarthLink's Chief People Officer) and had filed a charge with the EEOC, which is explicitly noted in the Complaint. The timing and hostility of the supervisor's conduct allow a reasonable inference that Plaintiff was being **punished for asserting his ADA rights** – in other words, retaliation. The ADA's anti-retaliation provision (42 U.S.C. § 12203) forbids employers from retaliating against an individual for requesting an accommodation or filing an EEOC charge. Plaintiff's allegations of derogatory comments, unwarranted discipline, and other negative treatment after his accommodation requests and EEOC activity easily satisfy the low threshold for a retaliation claim at the pleading stage. Indeed, even **non-tangible actions can constitute retaliation** if they would deter a reasonable person from engaging in protected activity. Being openly ridiculed about one's disability and written up for disability-related issues would certainly have a chilling effect on a person's willingness to exercise their rights, which underscores the plausibility of the retaliation claim.

Count III of the Complaint asserts *Disability Discrimination* more generally (disparate treatment). EarthLink contends Plaintiff has not alleged an "adverse employment action," but this misreads the Complaint and the ADA. Plaintiff alleges he was **treated less favorably than similarly situated non-disabled employees**, offering the example that other employees who required accommodations (such as nursing mothers) were **"not publicly criticized or disciplined"** as he was. He also claims that he and a group of colleagues were promised pay raises that were never delivered, and that only a few of the original hires (including Plaintiff) remained while others left due to poor conditions. While some of these allegations describe general workplace issues, the crux of the disability discrimination claim is that **Plaintiff was singled out and ridiculed because of his disability**, unlike others. The supervisory comments documented in the Complaint (e.g., calling Plaintiff an abuser of the system, invoking a death from diabetes) reflect **direct evidence of discriminatory animus** toward Plaintiff's condition. Additionally, the verbal warning Plaintiff received in January 2025 for disability-related attendance could qualify as an adverse action: it is a disciplinary measure placed in his record,

which could affect advancement or job security. Courts have found that even a reprimand or negative performance note, when unjustified and tied to a protected characteristic, can constitute an adverse employment action if it has potential to adversely impact the employee's terms and conditions of employment. At minimum, whether the warning and hostile treatment here amount to a materially adverse action is a question of fact not appropriate for resolution on a motion to dismiss. Plaintiff has **pleaded enough facts to raise a plausible inference of disability-based disparate treatment** compared to others (e.g., the nursing mothers who were accommodated without public shaming). The absence of a termination or demotion is not fatal to his ADA claim – particularly given that **failure to accommodate and workplace harassment are themselves actionable discrimination**, as discussed below. In sum, Count III is sufficiently supported by factual allegations of unfavorable treatment linked to Plaintiff's disability.

In evaluating the sufficiency of these claims, the Court should recall that at the pleading phase **"no detailed evidentiary showing is required"**. Plaintiff is not required to prove each element of a prima facie case for ADA discrimination or retaliation in his Complaint. It is enough that he narrates a logical story in which EarthLink knew of his disability and requests for accommodation, yet responded with undue delay, personal attacks, and punitive actions – which is exactly what the Complaint alleges. These well-pleaded facts, taken as true, **"state a claim to relief that is plausible on its face."** The motion to dismiss for failure to state a claim should therefore be denied.

## II. Plaintiff's Claims Are Timely and Administratively Exhausted

EarthLink next argues that Plaintiff's ADA claims are time-barred or that he failed to exhaust administrative remedies. This argument is refuted by the Complaint itself and by applicable law. Plaintiff explicitly pleaded that he **filed a timely charge of discrimination with the EEOC** (Charge No. 438-2025-01082) and subsequently **received a Notice of Right to Sue on April 29, 2025**. These facts, which must be accepted as true, demonstrate that Plaintiff exhausted the required administrative process under 42 U.S.C. § 12117(a) (incorporating Title VII's procedures for ADA claims). There is no indication that Plaintiff missed any EEOC deadline. To the contrary, the charge was "timely" filed – in Virginia, a deferral state, a charge is timely if filed within 300 days of the unlawful acts, and Plaintiff's EEOC filing appears to have satisfied that requirement. Indeed, the events at issue occurred between late 2024 and spring 2025, and Plaintiff had already obtained a right-to-sue by April 29, 2025, reflecting prompt administrative action. Moreover, Plaintiff **filed this lawsuit well within 90 days of receiving the right-to-sue letter**, as required by 42 U.S.C. § 2000e-5(f)(1). The right-to-sue is dated April 29, 2025, and the case was initiated shortly thereafter (the docket shows EarthLink's motion to dismiss was filed June 25, 2025, implying the Complaint was filed in May or early June 2025). Thus, any assertion of untimeliness in filing the suit is baseless – Plaintiff clearly met the statutory filing window.

EarthLink might contend that some specific claims or incidents were not encompassed in the EEOC charge. However, at the motion to dismiss stage, the Court generally does not have the full EEOC charge before it, and the Complaint's allegations should be deemed within the scope of the charge unless conclusively shown otherwise. Plaintiff pleaded that his EEOC charge put EarthLink on notice of the discrimination and retaliation (indeed, he alleges retaliation *after* the charge was filed, implying EarthLink was aware of it). In any event, the Fourth Circuit follows the rule that a civil suit may encompass all incidents "reasonably related to or growing out of the allegations" in the EEOC charge. See **Chacko v. Patuxent Inst.**, 429 F.3d 505, 509 (4th Cir. 2005). Here, Plaintiff's claims of failure to accommodate, discrimination, and harassment are intertwined and would naturally fall within the scope of an EEOC investigation into his disability discrimination allegations.

Furthermore, to the extent EarthLink argues that Plaintiff included **retaliation or hostile work environment incidents that occurred after his EEOC charge**, Fourth Circuit law permits such claims. The Fourth Circuit has expressly held that a plaintiff **"may raise the retaliation claim for the first time in federal court"** if it is based on an employer's actions taken in response to the filing of the initial EEOC charge. In other words, a plaintiff is not required to file a new EEOC charge to cover retaliatory acts that happened after and because of the original charge. *See, e.g., Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). Here, Plaintiff alleges exactly that scenario – he was mistreated in May 2025 (publicly humiliated by his supervisor) as retaliation for having engaged in the EEOC process. Under Fourth Circuit precedent, he is **deemed to have exhausted** this retaliation claim by virtue of his initial EEOC charge.

In sum, Plaintiff fulfilled his administrative obligations: he filed a timely EEOC charge, received a right-to-sue, and promptly filed suit. All of his ADA claims either were included in or are reasonably related to that charge. Therefore, EarthLink's motion to dismiss for lack of timeliness or failure to exhaust should be denied. There is simply no procedural bar to the Court hearing this case on the merits.

## III. The Complaint Identifies Adverse Actions and Harassing Conduct Actionable Under the ADA

EarthLink contends that Plaintiff did not suffer an "adverse employment action," implying that his claims must fail because he was not fired, demoted, or similarly affected. This argument misunderstands the breadth of actions that can support an ADA claim, and it overlooks the specific harms Plaintiff alleges.

First, in a **failure to accommodate** context, the "adverse action" is inherent in the denial or delay of a reasonable accommodation. The ADA treats the failure to provide necessary accommodation as discriminatory in itself – the employee need not also show a separate termination or demotion. By **withholding a reasonable accommodation for months and issuing a warning for**

**disability-related conduct** during that period, EarthLink effectively penalized Plaintiff for his disability. Courts recognize that a reprimand or disciplinary write-up that arises from an employer's failure to accommodate can qualify as an adverse action, since it places the employee at a disadvantage due to his disability. Here, the Complaint shows Plaintiff was meeting the job's requirements except for attendance issues caused by his diabetes regimen, and rather than accommodate those needs in a timely fashion, EarthLink cited him for absences – a clear adverse consequence directly tied to his disability and the accommodation lapse.

Second, for **retaliation**, the standard for what constitutes an adverse action is broader than for ordinary discrimination claims. A retaliation claim under the ADA (which incorporates Title VII's standard) can be based on any action that **"might have dissuaded a reasonable worker"** from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The supervisor's actions toward Plaintiff – such as publicly belittling his medical condition, accusing him of abuse, and continuing to subject him to hostility after he complained – are certainly the type of treatment that could deter a reasonable employee from asserting ADA rights. Moreover, the Complaint suggests that Plaintiff may have been denied a promised benefit (a wage increase that others were also expecting) and was **overburdened and underpaid compared to others**. While EarthLink might argue the raise issue affected multiple employees, the context is that Plaintiff and a group of similarly situated employees (including those who raised concerns) were treated worse in terms of compensation and workload. The **cumulative effect** of being denied accommodations, disciplined unjustly, and subjected to ridicule could well amount to a materially adverse change in the conditions of employment. Again, whether each of these actions is "adverse" is a factual question – but Plaintiff has alleged **concrete negative actions** (a formal warning, public humiliation, lost opportunity for a raise, and ongoing hostile behavior) which, taken together, qualify as adverse treatment under a liberal construction of his pro se complaint.

Third, EarthLink's argument fails to acknowledge that a **hostile work environment** is itself a violation of the ADA. An employee can show that the workplace became so permeated with discriminatory intimidation, ridicule, and insult based on disability that it altered the conditions of employment, even if no single act alone would constitute a traditional adverse action. Here, Plaintiff cites multiple incidents of harassment: his manager disclosed his medical information to co-workers in a disparaging way; on multiple days the manager made disrespectful comments to him in front of others; disabled employees (like Plaintiff) were **treated as unwelcome or mocked** (the manager referenced a friend's death to suggest Plaintiff's condition was a problem). These are not isolated stray remarks – the Complaint paints a picture of an ongoing pattern of hostility from late 2024 into 2025, which caused Plaintiff significant distress. The **Fourth Circuit recognizes hostile work environment claims under the ADA** just as under Title VII. In fact, the Fourth Circuit decided as a matter of first impression that a hostile work environment claim *is* cognizable under the ADA, noting the ADA's language prohibiting discrimination in the "terms, conditions, or privileges of employment" parallels Title VII. The court concluded that harassment on the basis of disability is actionable under the ADA, so long as the conduct is

sufficiently severe or pervasive to alter the conditions of employment. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (upholding a jury verdict for a plaintiff who was subjected to months of disability-related epithets and onerous assignments; "we conclude that [a hostile environment] claim is cognizable under the ADA").

Under this standard, Plaintiff's allegations of repeated derogatory comments and differential treatment because of his diabetes, occurring in front of coworkers and affecting his psychological well-being, support a **hostile work environment claim** (Count VI). The severity of the manager's remarks – effectively telling coworkers that Plaintiff was abusing his breaks and invoking a death to trivialize his condition – and the continuation of harassment even after higher management was informed, could be found to have made the workplace abusive for Plaintiff. At the pleading stage, he has certainly alleged enough to proceed: the determination of whether the harassment was "severe or pervasive" is fact-intensive and not amenable to resolution on the pleadings. For now, it is sufficient that Plaintiff has described **specific hostile acts** (dates, quotes, witnesses) that, if proven, would establish a work environment hostile to an employee with a disability.

In summary, EarthLink's assertion that "no adverse employment action" occurred is both legally and factually incorrect. Plaintiff has identified tangible negative actions (discipline, denial of timely accommodation, lost raises) *and* intangible harms (harassment, humiliation) that are actionable under the ADA. The law does not require a disabled employee to endure a campaign of mistreatment until he is actually fired to have a remedy. **Being subjected to a hostile, degrading environment and denied basic accommodations is sufficient harm** to state a claim. Therefore, EarthLink's motion to dismiss on the theory of "lack of adverse action" should be denied.

## IV. The Complaint Contains Sufficient Facts to Support Discrimination and Retaliation Claims

EarthLink also argues that the Complaint lacks sufficient factual matter to make out claims of discrimination or retaliation – essentially a Twombly/Iqbal plausibility challenge. This argument cannot withstand scrutiny of the Complaint, which is replete with factual details. Unlike a barebones pleading, Plaintiff's filing provides names, dates, and a narrative that ties his protected status and activities to the conduct he suffered. This easily satisfies the requirement of providing "fair notice" of the claims and the grounds on which they rest.

For the **disability discrimination** claim, Plaintiff has identified himself as an individual with a disability (Type 1 diabetes), and as qualified for his job with accommodation (he could perform the essential functions if allowed periodic breaks to manage his blood sugar). He describes how EarthLink's agents responded to his condition: notably, his manager **made overtly disparaging remarks about Plaintiff's disability and need for accommodation**. Calling an ADA

accommodated employee an abuser of the system and comparing him to someone who died of the same condition is not a neutral act – it strongly suggests discriminatory bias. The fact that this occurred in a work meeting and was directed at Plaintiff's medical situation is direct evidence of discriminatory motive. Additionally, Plaintiff points out that other employees who needed adjustments (like nursing mothers taking breaks) were treated respectfully and not "called out" publicly, whereas he was singled out for criticism. This kind of comparator allegation (even informally described) bolsters the inference that Plaintiff was treated worse *because of* his disability. The Complaint further notes that only half of the cohort of employees hired with Plaintiff remained, implying a pattern of the work environment driving people away, and that promises made to him and others (raises) were unfulfilled. While not every workplace grievance is actionable, the Court can reasonably infer that **Plaintiff's disability was a factor in how he was treated**, given the explicit references to it by management and the failure to accommodate him properly. These facts cross the threshold from merely possible to **plausible discrimination**. Certainly, they give EarthLink adequate notice of what Plaintiff believes was discriminatory (public shaming, failure to accommodate, etc.) and why (due to disability). Nothing more is required at this stage.

As for **retaliation,** the factual support is also strong. Plaintiff engaged in protected activities on two fronts: (1) requesting an accommodation for his disability (which many courts have held is protected conduct under the ADA's interference/retaliation provisions, as it is the exercise of an ADA right), and (2) filing an internal HR complaint and an EEOC charge complaining of disability discrimination (classic protected activity). The Complaint delineates the timeline: Plaintiff asked for accommodation in Sept. 2024; he received pushback and a warning in Jan. 2025 (after persisting in needing absences); he complained to HR and eventually to the Chief People Officer (meetings on April 2, 7, 16, 30 of 2025); he also filed an EEOC charge, resulting in a right-to-sue on April 29, 2025. In the midst of these events, his direct supervisor's attitude toward him clearly deteriorated – culminating in the February 27, 2025 disclosure and May 2025 incidents of open disrespect. The supervisor's February comments specifically framed Plaintiff's accommodation use as something abusive, which can be seen as retaliation for Plaintiff insisting on his accommodation rights or complaining to HR. The May incidents, coming right after the right-to-sue issuance, can be construed as retaliation for the EEOC charge (the timing is suggestive: within days of EarthLink learning of the right-to-sue or the charge process concluding, the supervisor allegedly acted out against Plaintiff in front of others). Such temporal proximity and overt hostility are classic indicia of retaliation. Moreover, the Complaint notes that EarthLink's upper management, despite acknowledging failures in handling Plaintiff's case (the CPO **"issued a personal apology"** for ADA process failures), ultimately *"denied wrongdoing"* and refused mediation, and thereafter Plaintiff's situation did not improve. This narrative supports an inference that, rather than resolving his concerns, EarthLink became defensive and allowed the retaliatory climate to persist.

These factual allegations easily clear the bar set by **Twombly** and **Iqbal**. They are not "naked assertions" or mere legal conclusions; they are concrete and particular. The Court in *Erickson v.*

*Pardus* emphasized that even somewhat "improbable" allegations must be taken as true and that a pro se complaint can be sufficient with basic facts, especially when those facts suggest real harm. Here, Plaintiff's facts -- if proven -- outline a coherent story of an employee with a disability who tried to use the ADA process and was met with employer resistance and backlash. Such a story is entirely plausible. Indeed, EarthLink's motion appears to dispute the facts or minimize them, but on a motion to dismiss the Court **cannot weigh evidence or decide whose version is right**. It must assume Plaintiff's version is true for now. And Plaintiff's version, as set forth in his Complaint, certainly **"allows the court to draw the reasonable inference"** that EarthLink is liable for ADA violations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In sum, the Complaint contains ample factual content to support each element of Plaintiff's claims, or at least to infer those elements. Any gaps or ambiguities can be clarified in discovery – they are not grounds for dismissal. At bottom, Plaintiff has described **what happened, when, and by whom**, and he has clearly linked those events to his disability and protected actions. That is exactly what a plaintiff must do to survive a 12(b)(6) motion. Therefore, EarthLink's argument of "insufficient facts" fails, and the motion to dismiss should be denied.

## V. The ADA Protects Against the Specific Harms Alleged: Confidentiality Breaches and Hostile Environment

EarthLink's motion suggests that some of Plaintiff's claims fall outside the scope of ADA protection – specifically, the **disclosure of medical information** by his supervisor and the **hostile work environment** he endured. This is incorrect. The ADA's provisions and federal courts' interpretations of them make clear that both of these types of harms are cognizable and can form the basis of a claim.

**Confidentiality of Medical Information:** The Complaint's Count IV is for "Unlawful Medical Disclosure." Plaintiff alleges that his manager, without justification, **disclosed Plaintiff's confidential ADA status and diabetic condition to a coworker**, and did so in a derogatory manner. The ADA contains a confidentiality requirement in 42 U.S.C. § 12112(d). In essence, if an employer obtains medical information about an employee (for instance, through the accommodation process or any disability-related inquiry), the employer must keep that information **confidential** and share it only with those who need to know (such as human resources or a supervisor for accommodation purposes). Disclosure to rank-and-file coworkers is not permitted. The manager's statement to a coworker that Plaintiff was "ADA" and "abusing the system" and reference to a death from diabetes plainly breached this confidentiality mandate. Courts have held that **violating the ADA's confidentiality provision is itself an act of discrimination**, actionable under the ADA, even if it does not lead to a traditional adverse employment action. For example, one court observed that *"[v]iolating confidentiality is an independent cause of action that does not require another type of disability discrimination."*

(citing *Gascard v. Franklin Pierce Univ.*, No. 14-cv-220-JL, 2015 WL 1097485, at *4 (D.N.H. Mar. 11, 2015)). In other words, an employee can sue for damages caused by the unauthorized disclosure itself. Here, Plaintiff suffered embarrassment and distress from the disclosure (learning that colleagues were made aware of his medical status in a disparaging context). The ADA absolutely covers this scenario – it is a **textbook violation of §12112(d)**. EarthLink cannot evade liability by claiming that "disclosure of medical information" is not in the ADA's scope; it is explicitly addressed by the statute's provisions on medical inquiries and confidentiality, and enforcement of those provisions is carried out through the same mechanisms as any ADA discrimination claim. Therefore, Plaintiff's Count IV is firmly grounded in the ADA, and EarthLink's motion to dismiss it should be denied.

**Hostile Work Environment:** As discussed in Section III, the ADA's broad language and case law support a claim for a disability-based hostile work environment. The Fourth Circuit in *Fox v. GM* unequivocally held that such claims are cognizable, joining other circuits in reasoning that the ADA's prohibition on discrimination in the "terms, conditions, and privileges of employment" includes protection from severe or pervasive harassment. Thus, EarthLink is simply wrong if it argues that a "hostile work environment" is not actionable under the ADA. The correct legal standard is the same as under Title VII: Plaintiff must eventually show (1) he is a qualified individual with a disability, (2) he was subjected to unwelcome harassment, (3) the harassment was because of his disability, (4) it was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere, and (5) there is a basis for imputing liability to the employer (e.g., the harasser was a supervisor, as is the case here). At the pleading stage, Plaintiff has alleged facts corresponding to each of these elements: he is qualified and disabled; he faced unwelcome conduct (snide comments, undue discipline, ostracism); the conduct was directly tied to his disability (explicit references to his condition in a negative way); it persisted over time (multiple instances) and caused him significant distress; and it was perpetrated by his direct supervisor (Wes Polly), making EarthLink vicariously liable for the supervisor's actions. These allegations are more than sufficient to state a hostile environment claim. Whether the harassment was "severe or pervasive" enough is a matter for proof, but considering the comments (which included profanity or shocking comparisons in *Fox*, and here include invoking death and dishonesty regarding a serious illness), Plaintiff's situation bears resemblance to other cases where courts found a viable hostile environment. Notably, in *Fox*, the supervisor had called the disabled worker epithets like "handicapped MF" and intentionally made his job harder; the Fourth Circuit upheld the jury's finding that this created a hostile environment. In the present case, telling coworkers that Plaintiff is abusing ADA accommodations and making inappropriate references to a friend's death from diabetes while criticizing Plaintiff's accommodations is similarly degrading and could easily poison the workplace for Plaintiff. Under the **liberal pleading standard**, Plaintiff has certainly alleged enough to go forward on this claim. EarthLink's suggestion that ADA does not cover such harassment is contrary to law, and its attempt to dismiss the hostile work environment count should be rejected.

In addition, Plaintiff's Complaint includes a Count V for "Emotional Distress" and a Count VII for "Pattern of Unequal Treatment and Retaliation." While EarthLink's motion focuses on ADA scope, to the extent it seeks dismissal of these counts as beyond the ADA, Plaintiff submits that these counts should be **read in context and liberally construed**, rather than stricken outright. Count V (Emotional Distress) essentially pleads the **harm Plaintiff suffered** – the mental anguish and psychological injury resulting from EarthLink's conduct. The ADA permits recovery of compensatory damages for emotional pain and suffering caused by discrimination (42 U.S.C. § 1981a(a)(2)), so this count can be viewed not as a separate cause of action, but as part of the damages stemming from the ADA violations. In the alternative, if the Court construes Count V as a state-law claim for intentional infliction of emotional distress (IIED), Plaintiff has at least alleged outrageous and intentional conduct (public humiliation about a serious health condition, betrayal of confidentiality, etc.) and resulting severe distress (declining mental state observed by friends/family). Given the high bar for IIED under Virginia law, reasonable minds could differ on whether the alleged conduct is "outrageous" enough – but at the pleading stage, it would be premature to dismiss this claim without letting Plaintiff develop the facts. A supervisor's callous disclosure of an employee's illness, paired with inappropriate references to a death from the same condition, could be deemed beyond the bounds of decency in a civilized society — particularly when such comments are made in a demeaning tone and appear intended to cause distress. Thus, Count V should remain in the case at least until a factual record is developed.

Count VII (Pattern of Unequal Treatment and Retaliation) appears to summarize the **overall pattern of conduct** Plaintiff endured, including being overworked, underpaid, and denied opportunities that others received. While this count may overlap with the earlier counts of discrimination and retaliation, it underscores that Plaintiff's experience was not an isolated incident but part of a broader pattern affecting him (and possibly others in his cohort). Liberally construing the pro se complaint, Count VII can be seen as an attempt to plead a **continuing violation or policy/practice** of disregarding employees' rights (which could bolster his claims or affect the statute of limitations analysis, for example). Even if the Court views Count VII as duplicative, there is no prejudice to allowing it to remain as an alternative theory at this juncture. If necessary, the Court could later require Plaintiff to consolidate claims or clarify that Count VII does not stand alone, but it is not a basis for *dismissal* of the lawsuit. The facts supporting Count VII are the same facts supporting the ADA claims, so dismissing it would have little practical effect except to remove a heading – something that can be addressed through amendment rather than dismissal with prejudice.

In summary, **the ADA's scope squarely encompasses Plaintiff's allegations** – covering failures to accommodate, retaliatory adverse treatment, breaches of medical confidentiality, and hostile work environment harassment. EarthLink's arguments to the contrary are unfounded. All counts in the Complaint, when read with the required liberality, describe conduct that the ADA (and related state tort law, in the case of emotional distress) forbids. Thus, none of Plaintiff's claims should be dismissed for falling outside the law's protection.

## VI. Liberal Construction and Leave to Amend (Pro Se Considerations)

Finally, the Court should bear in mind that Plaintiff is not a lawyer and his Complaint is a **pro se pleading**. As noted earlier, such pleadings are entitled to liberal construction and are held to less stringent standards. This principle is more than a formality – it is a directive that courts **should not hastily dismiss meritorious claims due to imprecise drafting or nomenclature**. If the Court finds any portion of Plaintiff's Complaint inartfully pleaded or lacking in clarity, the proper course is to allow Plaintiff an opportunity to clarify or to **construe the allegations in a way that does justice**, rather than dismissing the case outright. Fed. R. Civ. P. 8(e) directs that "[p]leadings must be construed so as to do justice," and Rule 15 encourages that leave to amend be "freely given" when justice requires. Here, Plaintiff has clearly put Defendant on notice of the essence of his grievances. There is no unfair surprise or prejudice in letting this case proceed to discovery on the ADA claims pled. Dismissing the Complaint at this stage would contravene the Fourth Circuit's guidance that trial courts should be especially hesitant to dismiss a pro se civil rights complaint without giving the litigant a chance to develop his case.

Therefore, even if the Court were to identify some technical defect in the pleading of one of Plaintiff's claims, the appropriate remedy would be **to permit an amendment** to cure the defect – not to terminate the lawsuit. Plaintiff respectfully requests that, in the unlikely event the Court finds any claim insufficiently pled, he be granted leave to amend his Complaint to address the issue. However, for all the reasons discussed, Plaintiff believes his current Complaint is adequate and that EarthLink's motion should be denied in its entirety.

# Conclusion

For the foregoing reasons, Plaintiff David Coleman respectfully requests that the Court **DENY EarthLink's Motion to Dismiss**. The Complaint, liberally construed, states valid claims under the ADA for failure to accommodate, disability discrimination, retaliation, breach of confidentiality, and hostile work environment, and also asserts related claims of emotional distress and a pattern of unequal treatment. Plaintiff has complied with all procedural prerequisites, and his detailed factual allegations must be accepted as true at this stage, easily satisfying the Rule 12(b)(6) standard. Dismissal would be inappropriate and unwarranted.

Plaintiff therefore asks that EarthLink's motion be denied in full. He further requests such other relief as the Court deems just and proper, including, if necessary, leave to amend his Complaint to more particularly state any claim. Given Plaintiff's pro se status and the liberal policy favoring adjudication on the merits, the proper course is to allow this case to move forward so that the truth of Plaintiff's allegations may be tested with evidence rather than dismissed on the pleadings.

Respectfully submitted,

7/2/2025

**David Coleman, Pro Se**

5244 Tacoma Mountain Road
Wise, VA 24293

Phone: (276) 238-7506

Email: flexfxtv@gmail.com