CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

July 02, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DAVID COLEMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25CV00032 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **EARTHLINK, LLC,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*David Coleman, Pro Se Plaintiff; Paul G. Klockenbrink and Harrison E. Richards, GENTRY LOCKE ATTORNEYS, Roanoke, Virginia, for Defendant.*

David Coleman has sued his employer EarthLink, LLC (Earthlink) under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, and state tort law. He alleges failure to accommodate, retaliation, disability discrimination, unlawful disclosure of medical information, infliction of emotional distress, hostile work environment, and a pattern of unequal treatment and retaliation, all in seven separate counts of his pro se complaint. EarthLink has moved to dismiss the complaint on the ground that the complaint fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). The motion has been fully briefed and after my careful consideration, it will be granted in part and denied in part.

## I. BACKGROUND.

The facts alleged in Coleman's pro se complaint must be taken as true for the purpose of deciding the motion to dismiss. Coleman, who has Type 1 diabetes, is employed at a facility of EarthLink located in this judicial district.[1] He alleges that he submitted a formal ADA accommodation request for flexible break and lunch times to help him manage his condition. After nearly four months, EarthLink had still not provided Coleman with this accommodation. Coleman states that he was instead reprimanded for absences related to his diabetes.

Coleman also alleges that after he requested accommodation and filed a charge with the Equal Employment Opportunity Commission (EEOC), his supervisor responded by disclosing information about his condition to a coworker and accusing him of abusing the system with his accommodation request. Coleman then brought his request to EarthLink's Chief People Officer, Scott Klinger, which resulted in four meetings. Coleman contends that Mr. Klinger apologized to him and acknowledged failures with the ADA process, but that EarthLink still refused to mediate or admit wrongdoing. In the days following the meetings, Coleman's supervisor allegedly demeaned Coleman in front of colleagues. Coleman claims that

---

[1] While not alleged, I may take judicial notice that Earthlink is a nationwide internet provider that has a call center located in Norton, Virginia, in this judicial district. Earthlink, *Earthlink Opens New Call Center in Norton, Virginia*, https://www.earthlink.net/media/press-releases/earthlink-opens-new-call-center-in-norton-virginia/ (August 9, 2024).

– 2 –

he suffered emotional and psychological distress from his experiences.  He seeks compensatory damages and a wage increase.

## II.  STANDARD OF REVIEW.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim, but "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  ANALYSIS.

### A.  Count I:  Failure to Accommodate.

The ADA requires an employer to "make reasonable accommodations for an applicant or an employee's disability." *EEOC v. Fed. Express Corp.*, 513 F.3d 360,

371 (4th Cir. 2008) (citing 42 U.S.C. § 12112(b)(5)(A)).  The applicable regulation

provides as follows:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).  To state a claim for failure to accommodate, a plaintiff

must plausibly allege "(1) that he was an individual who had a disability within the

meaning of the statute; (2) that the employer had notice of his disability; (3) that with

reasonable accommodation he could perform the essential functions of the position;

and (4) that the employer refused to make such accommodations."  *Wilson v. Dollar*

*Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks, alterations,

and citations omitted).

Coleman alleges that he requested flexible break and lunch times to manage

his diabetes.  He contends that EarthLink's management delayed his request and

failed to provide timely accommodation.  In response, EarthLink argues that

Coleman has not satisfied the third and fourth elements of his failure to

accommodate claim because he failed to allege facts showing that he could perform

the essential functions of his job with reasonable accommodation, or that EarthLink

failed to accommodate him altogether.  EarthLink contends that a delay in providing

accommodation does not necessarily constitute a denial of accommodation.

I find that Coleman has adequately stated a claim for failure to accommodate under the ADA.  Coleman has pleaded that he has diabetes and that EarthLink knew about his medical condition, satisfying the first two elements of a failure to accommodate claim.  As to the third element of the claim, Coleman explains that flexible break times would allow him to manage his diabetes.

As to the fourth element of the claim, Coleman states that he requested flexible break and lunch times and that, four months later, EarthLink still had not acted on his request.  EarthLink is correct that a delay of four months may prove to be reasonable considering the circumstances.  But the reasonableness of the delay is a fact-specific inquiry that is premature at the motion to dismiss stage, given that the record does not yet contain evidence that outside factors warranted the delay.  In contrast, Coleman contends that he attempted to escalate the request with no success and that an EarthLink executive eventually acknowledged ADA process failures.  Consequently, the motion to dismiss as to the failure to accommodate claim in Count I will be denied.

## B.  Count II: Retaliation.

Coleman also claims that EarthLink retaliated against him after he requested accommodation and pursued EEOC action.  EarthLink contends that this claim should be dismissed for a lack of exhaustion.  I disagree.

Before bringing suit in federal court, the ADA requires that plaintiffs exhaust their administrative remedies by first filing a charge with the EEOC. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5(b),(f)(1)). To ensure that plaintiffs provide potential defendants with notice of the dispute, the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Sydnor v. Fairfax Cnty.,* 681 F.3d 591, 593 (4th Cir. 2012) (quoting *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009)). A plaintiff may fail to exhaust administrative remedies when "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Id.* (internal quotation marks and citation omitted).

Here, Coleman's retaliation claim involves a similar set of facts to the other claims in his complaint. Although EarthLink argues that Coleman's failure to check the box for "retaliation" in his EEOC charge is fatal to his claim, I find that EarthLink had sufficient notice of this claim based on the rest of Coleman's allegations. The retaliation claim arises out of similar timing, individuals, and conduct. Therefore, I will proceed to the merits.

To establish a claim of retaliation under the ADA, a plaintiff must show that "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012).

Coleman alleges that after he engaged in protected activity, supervisors reprimanded him for absences, disclosed information about his medical condition to a fellow employee and treated him in a disrespectful manner in front of colleagues. That said, even if Coleman could demonstrate a link between his conduct and those incidents, none of them rise to the level of an adverse action required for a retaliation claim.

To establish an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning it could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). "[I]t is important to separate significant from trivial harms," as federal employment laws do not create "a general civility code for the American workplace." *Id.* (citation omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not" deter a reasonable worker from engaging in protected activity. *Id.*

In *Adams v. Anne Arundel County Public Schools*, a plaintiff brought a claim for retaliation under the ADA, arguing that written and verbal reprimands and required medical examinations regarding his disability constituted adverse employment actions. 789 F.3d 422, 426 (4th Cir. 2015). The court of appeals disagreed, explaining that:

> [R]eprimands and poor performance evaluations occur with some
> frequency in the workplace. While the analysis of them is necessarily
> dependent on the circumstances, . . . they are much less likely to involve
> adverse employment actions than the transfers, discharges, or failures
> to promote whose impact on the terms and conditions of employment
> is immediate and apparent.

*Id*. at 431 (citation omitted).

Coleman's allegations — that his supervisors reprimanded him for absences, mentioned his medical condition to a fellow employee, and treated him disrespectfully — although unpleasant, do not impact the terms of his employment to the degree of an adverse employment action. First, as EarthLink notes, Coleman's requested accommodation did not include the ability to take unexplained absences from his position and it is reasonable to reprimand an employee for unapproved absences. Second, the alleged conversation between a supervisor and a fellow employee in which Coleman was accused of abusing the system also does not affect the terms of Coleman's employment. Finally, the disrespectful treatment Coleman describes is an isolated instance of rudeness. Although the alleged conduct is unprofessional, occasional rudeness and criticism is not sufficiently akin to an employment action that would deter someone from engaging in protected activity. Accordingly, the motion to dismiss as to the claim for retaliation is granted.

### C.  Count III: Disability Discrimination.

Coleman brings a claim for disability discrimination, alleging that EarthLink discriminated against him due to his diabetes.  The ADA prohibits discrimination against "a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To establish disability discrimination, an individual must demonstrate that (1) he had an ADA-covered disability; (2) he was a "qualified individual," meaning that he could perform the essential functions of his job; and (3) his employer took an adverse action against him due to the disability.  *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997).

Coleman's disability discrimination claim fails because, as discussed above, he has not shown that his employer took an adverse action against him due to his diabetes.  The conduct he describes does not have an apparent impact on the terms and conditions of his employment.  Therefore, the motion to dismiss is granted as to this claim.

### D.  Count IV: Unlawful Medical Disclosure.

Coleman alleges that EarthLink disclosed his medical information in violation of the ADA when a supervisor allegedly made comments about his diabetes to a coworker.  Coleman claims that this occurred after he formally requested accommodations to manage his diabetes.

The ADA addresses employers' abilities to collect and disclose information about the medical conditions of their employees. *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006). Under 42 U.S.C. § 12112(d)(4)(A), employers may only inquire as to an employee's disability if the inquiry "is job-related and consistent with business necessity." There are two acceptable pathways by which employers may collect information about an employee's disability. 42 U.S.C. § 12112(d)(4)(B). They are: (1) voluntary medical examinations as part of an employee health program; and (2) inquiries into an employee's ability to perform job-related functions. *Id.*

Only when employers gather medical information under one of the methods listed in U.S.C. § 12112(d)(4)(B), do they create a duty of confidentiality regarding that medical information. *Heston v. Underwriters Lab'ys*, 297 F. Supp. 2d 840, 845 (M.D.N.C. 2003). In *Wiggins*, the court found that an employer did not violate the ADA when it disclosed an employee's medical information to coworkers because it had not obtained that information "as part of an employee health program or from medical examinations conducted at its direction." 451 F. Supp. 2d at 801–02.

The information about Coleman's diabetes was allegedly obtained through Coleman's accommodation request. There is no allegation that it was part of a medical examination for an employee health program. Therefore, the remaining

– 10 –

question is whether the information Coleman provided in his accommodation request is a response to an inquiry, and therefore not "voluntary."

Whether the act of providing medical information in a request for disability accommodations under the ADA is inherently a voluntary disclosure is unsettled. In *EEOC v. Seven-Eleven of Hawaii, Inc.*, the district court reviewed an EEOC decision that held that "an employer is also legally obligated to maintain the confidentiality of medical information which an employee volunteers to his employer in relation to a request for an accommodation to a disability." No. CV 07-00478 SPK-BMK, 2008 WL 4369335, at *1 (D. Haw. Sept. 24, 2008). The court noted that "there is a little or no law supporting the EEOC's position" and questioned the agency's decision to pursue the case. *Id.* In any event, the court ultimately upheld the EEOC's decision because the question was unresolved and the EEOC had not acted frivolously or unreasonably. *Id.*

In other cases, courts have typically looked beyond the accommodation or leave request itself and considered the context in which the employee provided the information. In *Mullin v. Secretary, U.S. Department of Veterans Affairs*, the Eleventh Circuit found that a disclosure of medical information was an inquiry under confidentiality standards analogous to the ADA when an employee was told she was required to submit medical documentation to secure her leave and pay. 162 F.4th 1296, 1311–12 (11th Cir. 2025). The court explained that "when an employee must

share medical information to receive benefits guaranteed by law, the requirement operates as an inquiry by the employer." *Id*. at 1312.

In *EEOC v. Ford Motor Credit Co.*, the court considered whether an employee's disclosures in seeking medical leave were in response to an inquiry and therefore required to be kept confidential. 531 F. Supp. 2d 930, 938 (M.D. Tenn. 2008). The court found that because the employee's supervisor told him "that he must disclose the information at issue before he would be given an accommodation," the disclosures were not voluntary and the confidentiality requirement applied. *Id.* In sum, "courts have allowed claims of illegal disclosure of confidential medical information to proceed to a jury when there are facts in the record demonstrating that a supervisor probed an employee for medical information or conditioned the employee's job accommodation or medical leave on the employee's provision of medical information to the supervisor." *Sherrer v. Hamilton Cnty. Bd. of Health*, 747 F. Supp. 2d 924, 933 (S.D. Ohio 2010).

Coleman alleges that he submitted information about his diabetes as part of the formal accommodation request. At this stage of the litigation, I will deny the motion to dismiss as to Count IV.

### E. Count V: Emotional Distress.

Coleman brings a claim for emotional distress, which I construe to be a claim under Virginia law. To prove a prima facie case of intentional infliction of emotional

distress, the plaintiff must establish (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable, and against the generally accepted standards of decency and morality; (3) that the wrongdoer's conduct and the emotional distress were causally connected; and (4) that the emotional distress was severe. *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974).

Whether conduct is sufficiently outrageous to permit recovery is a question of law for the court. *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987); *Womack*, 210 S.E.2d at 148. "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Gaiters*, 831 F.2d at 53 (quoting Restatement (Second) of Torts § 46 cmt. d (1965); *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). Liability "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Gaiters*, 831 F.2d at 53.

I find that the workplace conduct Coleman describes does not meet the high bar required for claims of intentional infliction of emotional distress. Coleman claims that he endured "public humiliation about a serious health condition." Pl.'s Mem. Opp. to Mot. to Dismiss 11, Dkt. No. 14. Coleman has plausibly alleged a lack of professionalism, but not extreme and outrageous conduct that would give rise

to a claim for intentional infliction of emotional distress.  Accordingly, the motion

to dismiss as to Coleman's claim for intentional infliction of emotional distress is

granted.

### F.  Count VI: Hostile Work Environment.

Coleman also alleges that he experienced a hostile work environment at

EarthLink.  To establish a claim for a hostile work environment under the ADA, a

plaintiff must show:

> (1) [H]e is a qualified individual with a disability; (2) he was subjected
> to unwelcome harassment; (3) the harassment was based on his
> disability; (4) the harassment was sufficiently severe or pervasive to
> alter a term, condition, or privilege of employment; and (5) some
> factual basis exists to impute liability for the harassment to the
> employer.

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).  To determine whether

a hostile work environment exists, courts "'look at all the circumstances, including

the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'"  *Gagnon v. Bd. of

Educ. of Montgomery Cnty.*, 760 F. Supp. 3d 359, 374 (D. Md. 2024) (quoting *EEOC

v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 175–76 (4th Cir. 2009)).

I find that Coleman's allegations do not demonstrate the severity or frequency

of harassment necessary for a hostile work environment claim.   Coleman's

complaint contends that "[m]anagement created a sustained hostile environment

– 14 –

through comments and differential treatment." Compl. 4, Dkt. No. 1. As discussed above, this conduct largely seems to consist of criticism from supervisors and a lack of discretion about Coleman's medical information. This does not rise to the level of a hostile work environment. Thus, the motion to dismiss as to the hostile work environment claim is granted.

### G.  Count VII: Pattern of Unequal Treatment and Retaliation.

Coleman's allegations do not sufficiently support a claim for a pattern of unequal treatment and retaliation. He contends that similarly situated coworkers were also mistreated, but the details he provides are that he "and others were promised pay raises which were never delivered." Compl. 3, Dkt. No. 1. Further, he contends broadly that other employees who received accommodations, potentially nursing mothers, were not publicly criticized. *Id.* These facts do not suggest a pattern of unequal treatment or that others who did not have disabilities categorically received better treatment. Accordingly, the motion to dismiss as to a pattern of unequal treatment and retaliation is granted.

### IV. CONCLUSION.

For these reasons, the motion to dismiss, Dkt. No. 8, is GRANTED in part and DENIED in part. Counts II, III, V, VI, and VII are dismissed. Counts I and IV remain.

It is so **ORDERED**.

ENTER:   July 2, 2026

/s/  JAMES P. JONES

Senior United States District Judge